**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Margaret Foley on behalf of
herself and all others
similarly situated

      v.                                    Civil No. 14-cv-063-LM
                                        Opinion No. 2015 DNH 078
Buckley's Great Steaks, Inc.;
and Michael Timothy's Dining
Group, Inc.

**O R D E R**

In this putative class action, Margaret Foley claims that

defendants violated 15 U.S.C. § 1681c(g)(1), a section of the

Fair and Accurate Credit Transactions Act of 2003 ("FACTA"),

when Buckley's Great Steaks, Inc. ("BGS") issued approximately

32,000 electronically printed point-of-sale credit-card receipts

that included the card's expiration date.  Before the court is

plaintiff's motion for class certification.

In the memorandum of law in support of her motion,

plaintiff recites the following class definition:

> All persons to whom, on or after February 6, 2012 (the
> "Class Period"), Defendants provided a receipt that
> has the person's full name, [the] last four digits of
> [the] credit card or debit card's numbers and the full
> credit card or debit card's expiration date.

Pl.'s Mem. of Law (doc. no. 26-1) 2.  In other filings, Foley describes the class in a variety of other ways,[1] but as she returns to the definition quoted above in her supplemental memorandum of law in support of class certification, document no. 31, the court takes that definition to be the operative one in this case.

After plaintiff filed her motion for class certification, but before the deadline for objecting, the parties filed a notice of settlement, and submitted a settlement agreement for approval by the court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Federal Rules").  At a pretrial scheduling conference held on January 9, 2015, which also touched upon the parties' request for preliminary approval of their proposed settlement, the court raised issues concerning class certification and directed the parties to brief them. Based upon that briefing, and for the reasons that follow, Foley's motion for class certification is denied.

---

[1] See Compl. (doc. no. 10) ¶ 31; Pl.'s Mot. for Class Cert. (doc. no. 26) 3; Stip. of Settlement (doc. no. 30) 2-3; Stip. of Settlement, Ex. A, Proposed Order (doc. no. 30-1), at 2; Stip. of Settlement, Ex. B, proposed public notice (doc. no. 30-2), at 1.

## I. The Substantive Law

The court begins by briefly describing Foley's cause of action.  She has sued under FACTA, which is "an amendment to the already existing Fair Credit Reporting Act [("FCRA")], 15 U.S.C. § 1981, et seq.," Rowden v. Pac. Parking Sys., Inc., 282 F.R.D. 581, 583 n.2 (C.D. Cal. 2012).  FACTA provides, in pertinent part:

> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

15 U.S.C. § 1681c(g)(1).  With respect to civil liability, the FCRA provides:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of –
>
>> **(1)(A)** any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000;
>>
>> . . . .
>>
>> **(2)** such amount of punitive damages as the court may allow; and
>>
>> **(3)** in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n(a).

## II. The Law of Class Certification

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550 (2011) (quoting Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979)).  Such actions are governed by Rule 23 of the Federal Rules.  Rule 23 establishes the following prerequisites to maintaining a class action:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> **(1)**   the class is so numerous that joinder of all members is impracticable;
>
> **(2)**   there are questions of law or fact common to the class;
>
> **(3)**   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> **(4)**   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  To determine whether those prerequisites have been met, a "district court must undertake a 'rigorous analysis.'" AstraZeneca AB v. United Food & Comm'l Workers Unions & Emp'rs Midwest Health Benefits Fund (In re Nexium Antitrust Litig.), 777 F.3d 9, 17 (1st Cir. 2015); see also Gintis v. Bouchard Transp. Co., 596 F.3d 64, 66 (1st Cir. 2010)

4

(citing Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 161 (1982); Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003)).

If all four prerequisites are met, then a class action may proceed, so long as the action fits into one of the three categories described in Rule 23(b).  Foley asserts that this case fits into the third category, which requires

> the court [to] find[ ] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).[2]  "In classes certified under Rule 23(b)(3), the Rules invite a close look at the case before it is

---

[2] The Federal Rules further provide that the matters pertinent to making findings on predominance and superiority include:

**(A)**  the class members' interests in individually controlling the prosecution or defense of separate actions;

**(B)**  the extent and nature of any litigation concerning the controversy already begun by or against class members;

**(C)**  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

**(D)**  the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

accepted as a class action." Brown v. Am. Honda (In re New Motor Vehicles Canadian Exp. Antitrust Litig.), 522 F.3d 6, 18 (1st Cir. 2008) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997)) (citations, internal quotation marks, and alteration omitted).

"A party seeking class certification must affirmatively demonstrate his compliance with . . . Rule [23]." Wal-Mart, 131 S. Ct. at 2551; see also Smilow, 323 F.3d at 38 (citing Amchem, 521 U.S. at 614). Finally,

> [i]n addition to the explicit requirements of Rule 23, courts generally recognize the "implicit requirement" that the class definition must be sufficiently definite to allow the court, parties, and putative class members to ascertain class membership.

Kenneth R. ex rel. Tri-County CAP, Inc./GS v. Hassan, 293 F.R.D. 254, 263 (D.N.H. 2013) (quoting Shanley v. Cadle, 277 F.R.D. 63, 67-68 (D. Mass. 2011)).

### III. Discussion

In their objection to class certification, defendants argue that: (1) Foley is not an adequate class representative, as required by Rule 23(a)(4); and (2) a class action is not "superior to other available methods for fairly and efficiently adjudicating the controversy," Fed. R. Civ. P. 23(b)(3). The court considers each argument in turn.

6

A. Adequacy of the Proposed Class Representative

Judge Woodlock has recently described the Rule 23(a)(4) adequacy requirement:

> This is a two-part requirement. First, the plaintiffs must establish "that the interests of the representative party will not conflict with the interests of any of the class members." Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985). Second, the plaintiffs must show "that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." Id.

Bezdek v. Vibram USA Inc., --- F. Supp. 3d ---, ---, 2015 WL 223786, at *9 (D. Mass. 2015); see also Guardian Angel Credit Union v. MetaBank, No. 08-cv-261-PB, 2010 WL 1794713, at *4 (D.N.H. May 5, 2010) (employing Rule 23(a)(4) standard drawn from Andrews).

Here, defendants do not suggest that there is a conflict of interest between Foley and the other members of the proposed class, nor do they challenge Foley's counsel's qualifications or experience. Rather, they focus on: (1) Foley's lack of knowledge concerning the case and her passivity as a plaintiff; and (2) a lack of credibility that manifested itself at her deposition.

With regard to Foley's knowledge of and participation in this suit, defendants point to Foley's deposition testimony that: (1) her communication with counsel has been limited to two

telephone conversations and two e-mails; (2) she did not learn until her deposition that her complaint had been amended; (3) she engaged in no research to determine her counsel's qualifications; and (4) she knew nothing about the terms of the proposed settlement agreement before it was submitted to defendants and the court, and never saw the proposed agreement until it was produced at her deposition.

Legally, defendants place substantial reliance upon a district court order from the Fifth Circuit, Ogden v. AmeriCredit Corp., 225 F.R.D. 529 (N.D. Tex. 2005).  In his order in Ogden, Judge Means applied the following test:

> "[T]he [Rule 23(a)(4)] adequacy requirement mandates an inquiry into (1) the zeal and competence of the representative's counsel and . . . (2) the willingness and ability of the representative[ ] to take an active role in and control the litigation to protect the interests of the absentees." Berger [v. Compaq Computer Corp.], 257 F.3d [475,] 479 [(5th Cir. 2001)] (citing Horton [v. Goose Creek Indep. Sch. Dist.], 690 F.2d [470,] 484 [(5th Cir. 1982)]).  Additionally, "[t]he adequacy inquiry also 'serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent.'" Id. at 479-80 (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997)).

Id. at 532 (footnote omitted).  Unlike the First Circuit's two-part Andrews test, the Fifth Circuit's three-part Berger test includes an inquiry into the class representative's willingness

and ability to take an active role in controlling the
litigation.  See id.

But, "[t]he First Circuit . . . has not adopted the Fifth
Circuit standard, even in the [legal] context of securities
class action litigation [in which that standard originated]."
Carrier v. Am. Bankers Life Assur. Co. of Fla., No. 05-CV-430-
JD, 2008 WL 312657, at *9 (D.N.H. Feb. 1, 2008) (citing In re
Organogenesis Secs. Litig., 241 F.R.D. 397, 406 (D. Mass.
2007)).  As Judge DiClerico explained:

> In this district, the court has held that class
> representatives need not have expert knowledge of the
> subject matter of the suit, may rely on class counsel
> for guidance, and need not be subjectively interested
> in the case, as long as the representatives have not
> virtually abdicated control of the case to counsel.
> In re Tyco Int'l, Ltd., [No. MD-02-1335-M,] 2006 WL
> 2349338 at *2 (D.N.H. Aug. 15, 2006).  A class
> representative is expected to maintain sufficient
> involvement in the case to protect the class against
> counsel's possibly competing or conflicting interests.
> Id.

Carrier, 2008 WL 312657, at *9.

In Carrier, one of the two proposed class representatives
gave deposition testimony concerning her "role in protecting the
class from counsel's possibly conflicting interests," 2008 WL
312657, at *9.  The court characterized her testimony this way:

> Carrier testified in her deposition that she would
> represent the class by giving her deposition, being
> prepared to go to court, and by "keeping close track
> of what the attorneys are doing, as close as I can."

She explained that she would keep track of the
attorneys through email and would trust the attorney's
judgment when a course of action was recommended to
her.  When asked what she would do if a conflict arose
between the interests of the class and counsel,
Carrier answered, "I'm not technically sure how I
would decide on that.  I might have to ask somebody
else."  She listed her duties as being honest, telling
the truth, "to be there if it's needed," and "to make
sure that information submitted is as proper as I can
tell."  In response to additional questioning, Carrier
did not know what the time limits of the class claims
would be or what states were included in the action.
She also indicated limited contact with her attorneys.

Id. at *9 (citations to the record omitted).  The testimony of

the second proposed class representative, as characterized by

the court, was similar:

Whitman testified that her duties as class
representative would be "to do things like a
deposition and to really just be that representative
if there is, you know, a trial or whatever it would
involve to get to that end result for, again, what's
fair and otherwise owed to the class."  She would
fulfill her responsibilities "[w]ith help from counsel
advising me what that, the best thing is to do for
them, which to me would be representing them."  She
further stated that if she disagreed with counsel, she
would let him know.  At the time of the deposition,
she had had one meeting with counsel, six telephone
conversations, and email communications.

Id. at *10 (citations to the record omitted).  Based upon the

foregoing, the court concluded: "[N]either Carrier nor Whitman

has demonstrated she understands how to fulfill her duty to

protect the interests of the class.  Therefore, the requirements

of Rule 23(a)(4) also appear to be insufficiently addressed to support a finding of adequacy." Id. at *10.

In her deposition in this case, Foley gave the following testimony concerning her understanding of her role as a class representative:

> Q. Miss Foley, I'm just asking you, do you know, sitting here right now, what your responsibilities are to the class as a whole?
>
> A. Yes.
>
> Q. Okay. And what are they? I'm just asking you what you understand them to be.
>
> A. To – for the settlement should not be dropped and that should be settled.
>
> Q. Okay. Do you understand yourself to have any other responsibilities?
>
> A. The costs.
>
> Q. What about the costs?
>
> A. The cost of notification and the draft, if necessary, I am to remain responsible to share all costs.
>
> Q. You bear those costs, you personally?
>
> A. Yes.
>
> Q. Okay. Do you view yourself as having any responsibility to mak[e] sure that the lawyers you have retained to pursue this action can do so competently and ethically?
>
> A. Yes.

Defs.' Obj., Edwards Aff., Ex. 1 (doc. no. 41-3), Foley Dep. 90:3-24 (boldface omitted).  The foregoing exchange between Foley and defendants' counsel appears to be the full extent of Foley's testimony concerning her responsibilities as a class representative; her own counsel did not question her on that topic during her deposition.  Nowhere in her testimony does Foley give any indication that she was aware the biggest issue Judge DiClerico raised in Carrier, i.e., the class representative's duty "to protect the class against counsel's possibly competing or conflicting interests," 2008 WL 312657, at *9.

Moreover, Foley's deposition demonstrates that she has had minimal involvement in her case.  After she first contacted Attorney Lyons by telephone, her subsequent contact with him has been limited to: (1) two e-mails in which Attorney Lyons sent her copies of her original complaint and her affidavit in support of class certification,[3] see Foley Dep. 86:23-87:3; and (2) one telephone conversation in which Attorney Lyons notified her of her deposition, see id. at 86:15-19.  Substantively,

---

[3] But, Attorney Lyons seems not to have provided Foley with a copy of her amended complaint, given her deposition testimony that she had never seen that document before the day of her deposition.  See Foley Dep. 95:18-96:6, 97:3-7.

while she testified that Attorney Lyons notified her that a settlement had been reached with defendants, see id. at 100:13-16, she also testified that she first saw the settlement agreement at her deposition, see id. at 97:13-16, 100:17-19, and that she knew nothing about its terms, see id. at 101:3-5.[4]

Foley may not have been quite as unknowledgeable and disengaged as the proposed class representative in In re Sepracor, Inc. Securities Litigation, who: (1) "did not know the name of the defendant," 233 F.R.D. 52, 55 (D. Mass. 2005); (2) "did not know the name of the drug at the center of [the] case," id., (3) had his grandson answer the interrogatories directed to him, see id.; and (4) "agreed to lend his name to [the] suit only upon the condition that it would take a minimal amount of time," id. But, Foley's working knowledge of her cause of action was limited at best, given her vague descriptions of her claim as being based on receiving a credit-card receipt with "a lot of numbers on it," Foley Dep. 44:23; see also id. at 54:18-55:6, 58:16-22. Nor was Foley a particularly active participant in her case, as evidenced by the fact that she was unaware that she had filed an amended complaint, and knew nothing about the

---

[4] A stipulation of settlement, which included the proposed settlement agreement, was filed with the court on November 25, 2014. Foley was deposed nearly three months later, on February 20, 2015.

13

terms of the settlement her counsel proposed until she saw the proposed settlement agreement at her deposition.

Foley's lack of knowledge about the litigation of this case leads to a third issue. Even if she had had a firm grasp on her responsibilities as a class representative, it would have been impossible for her to protect the interests of the class when she did not know the terms of the settlement agreement before it was submitted to defendants, supposedly on her behalf.

In sum, even under the less stringent First Circuit standard identified by Judge DiClerico in In re Carrier, rather than the defendant-friendly Fifth-Circuit standard, Foley has failed to demonstrate that she can adequately represent the interests of the plaintiff class, as required by Rule 23(a)(4). However, while the court agrees with defendants that Foley abdicated control over her case to such an extent that she cannot adequately represent the interests of the class, the court cannot concur in defendants' harsh assessment of Foley's personal integrity.

Defendants base their second Rule 23(a)(4) argument largely upon Friedman-Katz v. Lindt & Sprungli (USA), Inc., 270 F.R.D. 150 (S.D.N.Y. 2010). In that case, the plaintiff in a putative class action stated in interrogatory answers that: (1) she had been "a party to four legal action[s] over the past fifteen

14

years," id. at 156; and (2) "she had no previous relationship with Daniel Edelman or his law firm," id. at 157.  At her deposition, she swore that her interrogatory answers were true. See id.  Later in her deposition, however, she admitted that her relationship with Attorney Edelman actually predated the filing of her suit against Lindt, see id. at 158, and that Edelman and his partner "might have represented her on other lawsuits that she did not disclose in her interrogatories," id.  Ultimately, it came out that the plaintiff in Friedman-Katz had been a party in at least 11 lawsuits filed before the date of her deposition and that in all but one of them, had been represented by attorneys from Attorney Edelman's firm.  See id. at 159. Suffice it to say that none of allegedly "improper or questionable conduct," id. at 160, that defendants ascribe to Foley comes close to the false testimony offered under oath by the plaintiff in Friedman-Katz.  There are several inconsistencies in Foley's deposition testimony, which could be useful in attacking her credibility at trial, but nothing that would support branding her a perjurer.

To conclude, while Foley has not been sufficiently involved in this case to be an adequate class representative, the court declines to find that she lacks the personal integrity to serve in that role.

15

B. Superiority

Plaintiffs' motion for class certification also founders on
the Rule 23 superiority requirement, under which the court must
find "that a class action is superior to other available methods
for fairly and efficiently adjudicating the controversy." Fed.
R. Civ. P. 23(b)(3).  Here, the principal alternative to a class
action would be the litigation of individual claims.

Defendants argue that a class action is not superior to the
litigation of individual claims because the threat of
"annihilative" damages would likely leave BGS "with no choice
but to shutter its operations and leave the class to pick over
the bones of what is left," Defs.' Obj. (doc. no. 41) 12, and
thus "destroy a business that provides a livelihood to 50
individuals," id. at 13.  Their argument is based upon: (1)
their identification of 31,894 credit-card customers during the
proposed class period, which exposes BGS to potential liability
of between $3,189,400 and $31,894,000; and (2) BGS's net annual
income of $45,831 and its book value of $88,347.

In a concurring opinion in Stillmock v. Weis Markets, Inc.,
Judge Wilkinson noted that in that case, there was a "real
possibility that the suggested class could bankrupt an entire
chain of supermarkets," 385 F. App'x 267, 276 (4th Cir. 2010)
(Wilkinson, J., concurring).  Judge Wilkinson began by noting

16

his concern "that the exponential expansion of statutory damages through the aggressive use of the class action device is a real jobs killer that Congress has not sanctioned."  Id.  He then went on to say that he saw "nothing in [FACTA] that mandates class action treatment of FACTA claims or precludes a district court from considering the prospect of annihilative liability in the certification calculus."  Id.

The position that Judge Wilkinson articulated in his concurrence in Stillmock has not been met with universal approval.  As Judge Quist recently noted:

> At least two circuits have expressly said that a district court cannot consider the economic impact of potential damages for purposes of certification.  See, e.g., Bateman v. Am. Multi-Cinema, Inc., 623 F.3d 708, 723 (9th Cir. 2010) ("[T]he district court abused its discretion in considering the proportionality of the potential liability to the actual harm alleged in its Rule 23(b)(3) superiority analysis."); Murray v. GMAC Mortg. Corp., 434 F.3d 948, 953–54 (7th Cir. 2006) ("The district judge sought to curtail the aggregate damages for violations he deemed trivial.  Yet it is not appropriate to use procedural devices to undermine laws of which a judge disapproves.").  Accord Landsman & Funk v. Skinder-Strauss Assocs., 640 F.3d 72, 94–95 (3d Cir. 2011), partially reinstated, other portions vacated, 2012 WL 2052685 (Apr. 17, 2012) ([T]he [district court] stated that a class action would not be a superior method of handling claims under the TCPA.  We are not so sure this is correct.").

> The undersigned, with sympathy for Judge Wilkinson's point of view, does not consider the economic impact of a damage award at this time.  This could possibly be considered after entry of judgment for plaintiffs.

17

Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc., No. 1:09-CV-1162, 2012 WL 3027953, at *5-6 (W.D. Mich. July 24, 2012); see also Leysoto v. Mama Mia I., Inc., 255 F.R.D. 693, 696-97 (S.D. Fla. 2009) (noting disagreement between Seventh and Ninth Circuits concerning whether the potential amount of class damages may be considered in context of Rule 23 superiority analysis).

Given the split of authority regarding the validity of the "annihilative damages" argument against class-action superiority, and the absence of guidance from the First Circuit on that issue, this court is not inclined to rely on that theory as a basis for determining that a class action is inferior to other available alternatives.[5]  However, there are at least three reasons why the litigation of individual claims is superior to a class action in this case.

The first reason was well described by Judge Carney in Rowden.  As he observed:

> In evaluating superiority, the court must consider the likely difficulties in managing the case, specifically "the whole range of practical problems that may render the class action format inappropriate for a particular suit." Eisen v. Carlisle and Jacquelin, 417 U.S. 156,

---

[5] The court also has some difficulty crediting defendants' contention that "[c]ertifying [a class in] this action will place [BGS] onto the path of imminent ruin," Defs.' Obj. (doc. no. 41) 13, given the ease with which the parties struck the settlement agreement they once asked the court to approve.

164 (1974).  One such manageability concern is a
court's ability to clearly define and ascertain the
contours of the proposed class.  Schwartz v. Upper
Deck Co., 183 F.R.D. 672, 679-80 (S.D. Cal. 1999)
("Although there is no explicit requirement concerning
the class definition in FRCP 23, courts have held that
the class must be adequately defined and clearly
ascertainable before a class action may proceed.")

282 F.R.D. at 584-85 (parallel citation omitted).  Rowden was a

FACTA case involving credit-card receipts printed by machines at

municipal parking lots.  See id. at 584.  In that case, Judge

Carney ruled that the plaintiff failed to establish superiority

because the class was too difficult to manage.  See id. at 585-

86.  Difficulties in management, in turn, resulted from the need

to conduct individual inquiries to ascertain whether a potential

plaintiff used a personal credit card, which is a necessary

element of a FACTA claim, or used a corporate credit card, which

disqualifies a transaction from FACTA protection.  See id. at

585; see also Evans v. U-Haul Co. of Cal., No. CV 07-2097-JFW

(JCx), 2007 WL 7648595, at *3 (C.D. Cal. Aug. 14, 2007)

(explaining, in context of superiority analysis, that class

certification was inappropriate due to necessity of

"individualized factual determinations as to which customers

were 'consumers'" as defined by FACTA).  Given the difficulties

associated with ascertaining the class, in this case as in

Rowden, "[a] class action is certainly not an efficient method

19

for resolving this controversy," 282 F.R.D. at 586.  Finally, at least one court has suggested that a lack of ascertainability calls into question a plaintiff's ability to satisfy the Rule 23(a)(1) numerosity requirement.  See Grimes v. Rave Motion Pictures Birmingham, L.L.C., 264 F.R.D. 659, 666 (N.D. Ala. 2010).

A second reason why a class action is not superior has to do with the low cost of pursuing a meritorious individual action.  In discussing the superiority requirement in Tardiff v. Knox County, a case about strip searches in a county jail, Judge Boudin articulated a case-specific version of the quintessential argument in favor of class actions: (1) most strip-search claimants' damages were small; and (2) for those with low-value claims, "class status [was] probably the only feasible [way] (one-way collateral estoppel aside), to establish liability and perhaps damages."  365 F.3d 1, 7 (1st Cir. 2004) (citing Blihovde v. St. Croix Cnty., Wis., 219 F.R.D. 607, 622 (W.D. Wis. 2003); Mack v. Suffolk Cnty., 191 F.R.D. 16, 25 (D. Mass. 2000)).  See also Gintis, 596 F.3d at 66-67 ("Rule 23 has to be read to authorize class actions in some set of cases where seriatim litigation would promise such modest recoveries as to be economically impracticable.") (citing Amchem, 521 U.S. at 617; Smilow, 323 F.3d at 41).  The concerns described in Tardiff

and Gintis, however, do not counsel in favor of class

certification in this case.

A plaintiff who asserts a successful FACTA claim is

entitled to costs and reasonable attorney's fees.  See 15 U.S.C.

§ 1681n(a)(3).  As Judge Carney explained in Rowden:

> Out of concern that a small statutory award [of
> between $100 and $1000] might dissuade potential
> challenges to a FACTA violation, Congress took the
> significant step of making attorney's fees, costs, and
> punitive damages available to individual litigants.
> See 15 U.S.C. § 1681n(a)(2), (3).  These remedies give
> individuals truly harmed by a FACTA violation a more
> than sufficient incentive to bring an action even if
> the amount of recovery is difficult to quantify or
> relatively small.

282 F.R.D. at 586 (footnote omitted); see also Grimes, 264

F.R.D. at 669 ("because FCRA provides for an award of attorney's

fees and costs in addition to statutory damages . . . there is

no financial impediment for a person who receives a non-

compliant receipt from finding a good lawyer to bring an

individual claim").  Thus,

> individual litigation . . . is a far superior method
> available to adjudicate this controversy.  In FACTA,
> Congress created a litigant friendly apparatus for
> addressing an alleged violation on an individual
> basis.  . . .  With [this] alternative method[ ] of
> resolving the dispute available, it is simply not
> credible to argue that a class action is the
> "superior" method.

Rowden, 282 F.R.D. at 587 (footnote omitted); see also Gist v.

Pilot Travel Ctrs., LLC, Civ. No. 5:08-293-KKC, 2013 WL 4068788

(E.D. Ky. Aug. 12, 2013), at *8 (explaining that FACTA's "statutory right to recover fees makes individual suits a more adequate alternative") (citation omitted); Grimes, 264 F.R.D. at 669; Evans, 2007 WL 7648595, at *6.

As to what an individual action might look like in a FACTA case, in Grimes, Judge Acker reported the plaintiff's own description of such an action:

> According to Grimes, a person who seeks only statutory damages need only file suit, present his or her FACTA non-compliant receipt, prove some knowledge about FACTA by the vendor, and await a jury award of between $100 and $1,000, plus attorney's fees and costs, and even punitive damages if the court finds that punitive damages are called for.

Grimes, 264 F.R.D. at 669. Here, the court can see no reason why a class action would be superior to an individual action of the sort described in Grimes.

Yet a third reason why a class action is not superior to individual action was described in Evans. Without expressing an opinion about the litigation of the case before him, Judge Walter pointed out the potential for attorney abuse in the form of the solicitation of litigation. See Evans, 2007 WL 7648595, at *7. Judge Cote raised similar concerns more recently in Reed v. Continental Guest Services Corp., where there was "evidence that [the] litigation [was] driven principally by lawyers and their desire to obtain an award of attorney's fees pursuant to

FACTA rather than any real injury to a consumer." No. 10 Civ. 5642(DLC), 2011 WL 1311886, at *2 (S.D.N.Y. Apr. 4, 2011).

This does not appear to be a case, such as Reed, in which the underlying FACTA violation was committed against a person who had been directed by agents of her lawyer's firm to go out and find a FACTA violation. See 2012 WL 1311886, at *2. But, on the other hand, Massachusetts resident Foley took an individual claim against a New Hampshire restaurant to a Minnesota law firm which, in turn, filed her claim as a class action. Moreover, the court notes that the proposed settlement contemplates: (1) an award of attorneys' fees of between $55,000 and $77,000; (2) a payment of $3,000 to Foley; and (3) a gift card worth up to $14 that class members may use to purchase a BGS appetizer, presuming that they ever learn of the suit and successfully negotiate the proposed application process. Finally, as the court has already noted, Foley has been only minimally involved in her case. Given the history of Foley's involvement in this litigation, it would not be difficult to conclude that this case is rather substantially lawyer-driven.

In sum, Foley has failed to demonstrate "that a class action is superior to other available methods for fairly and efficiently adjudicating [this] controversy," Fed. R. Civ. P. 23(b)(3) because: (1) her proposed class would be difficult to

23

manage because it is not ascertainable; (2) a successful individual action would provide her with costs and attorneys' fees; and (3) her proposed class action appears to be substantially more attorney-driven than client driven.

### IV. Conclusion

For the reasons described above, Foley's motion for class certification, document no. 26, is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

April 9, 2015

cc:   John M. Edwards, Esq.
      Thomas J. Lyons, Esq.
      Roger B. Phillips, Esq.
      David W. Pinsonneault, Esq.